BARBARA K. BERRETT (4273)
ZACHARY C. MYERS (15302)
**BERRETT & ASSOCIATES, L.C.**
Washington Federal Building
405 South Main Street, Suite 1050
Salt Lake City, UT  84111
Phone 801-531-7733
bberrett@berrettandassoc.com
zmyers@berrettandassoc.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JENNIFER ZORKO<br><br>     Plaintiff,<br><br>v.<br><br>YOUNG AUTOMOTIVE GROUP, INC.<br><br>     Defendant. | **COMPLAINT**<br>**(JURY DEMANDED)**<br><br><br>Civil No.  1:19-cv-00042-EJF<br><br>The Honorable  Evelyn J. Furse |

Plaintiff JENNIFER ZORKO, submits the following Complaint against Defendant Young

Automotive Group, Inc. ("YAG"):

1

## NATURE OF THE CLAIMS

1.      This suit is brought by a former employee of YAG under Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. §1981; and through the Court's
pendent jurisdiction, for claims arising from a practice and pattern of gender discrimination.
Defendant's supervisor's harassed, and condoned other employees who harassed, Plaintiff by
calling her names such as "YAG Bitch." Ms. Zorko complained regarding this treatment multiple
times, including in meetings in April 2017. She was fired at the beginning of May 2017.
Defendant discriminated against Ms. Zorko in the conditions of her employment and terminated
Ms. Zorko because of her sex and/or in retaliation for reporting sexual harassment.

2.      Plaintiff seeks all available equitable relief, damages, attorney fees, costs and
interest, punitive damages, as well as declaratory and injunctive relief.

## PARTIES

3.      At all relevant times, Plaintiff Jennifer Zorko was a Utah resident and was an
employee of YAG within the meaning of 42 U.S.C. §2000e(f).

4.      Young Automotive Group, Inc. ("YAG") is a Utah corporation. Among other
things, YAG owns and manages car dealerships. YAG headquarters is located at 645 North Main
Street, Layton, Utah 84041.

5.      YAG has over 15 employees.

6.      YAG has over 500 employees.

7.     As a corporation, YAG acts through its shareholders, directors, employees, and agents. As the employer of those who set policy and who are involved with its business operations, YAG is responsible for the acts and omissions of its managers, employees, and agents.

## JURISDICTION AND VENUE

8.     This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5 and § 1981; 29 U.S.C. §§ 206, 2617; and Utah law. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

9.     Pursuant to 28 U.S.C. § 1391(b), venue is proper with this Court as all the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Utah.

10.     Plaintiff filed a charge of discrimination with both the Utah Anti-Discrimination and Labor Division ("UALD") and the Equal Employment Opportunity Commission ("EEOC") and has otherwise exhausted her administrative remedies within the meaning of Title VII.

11.     The EEOC/UALD issued Plaintiff a "Notice of Right to Sue" on February 7, 2019, which was received by Plaintiff on February 9, 2019 and Plaintiff filed her initial Complaint within ninety (90) days.

12.     The Notice of Right to Sue is attached as Exhibit 1.

## GENERAL ALLEGATIONS

13.     YAG hired Ms. Zorko in approximately March 2012.

14.     At all times relevant to this Complaint, Ms. Zorko was employed as the Director of Business Operations and Corporate Trainer.

**SEXUAL HARASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND/OR RETALIATION**

15.     In 2014, YAG employees Oliver Young became Ms. Zorko's supervisor.  In 2016, Ty Johnston was also assigned to supervise Ms. Zorko's in her additional role of Corporate Trainer.

16.     During this period from approximately 2014 to 2017, Ms. Zorko was called the "YAG Bitch" multiple times by multiple YAG employees. During this same period, Johnston called Ms. Zorko "ball buster" and "high maintenance."

17.     On multiple occasions, Ms. Zorko requested reported this treatment to Oliver Young and asked her supervisors to put a stop to the use of the aforementioned name calling.

18.     On multiple occasions, Ms. Zorko told Johnston that it was not humorous or appropriate to call her "ball buster" or "high maintenance."

19.     On one occasion, Johnston told Ms. Zorko that he would not stop, because "it was funny and the truth," or something to that effect.

20.     In addition to Young and Johnston's sex-based nicknames, manager Jared Price expressed his preference to hire men instead of women. Price said he did not want to hire women because they're "too dramatic," "sensitive," "they should be at home with their kids," and they're "unreliable," or something to that effect.

4

21.     Price referred to Ms. Zorko as "high-maintenance" based on the fact that she requested a new chair, which YAG then purchased from RC Willey. "High-maintenance" is a sexually charged term that was only used in reference to women, not men. Men at Young Automotive frequently upgraded their office equipment without issue or complaint.

22.     Price had influence over Ms. Zorko's ability to succeed at the company, as one of the store managers with whom she had to coordinate her work. In this role, Price had influence over her continued employment.

23.     Ms. Zorko was denied the same privileges that similarly situated male employees were given, like per diem for expenses and office equipment.

24.     Male employees such as AH, CG, BT, and AJ would inquire into the sex lives of women employees and spread rumors about them.

25.     Sales Manager BT would tell employees that Ms. Zorko only had her position because she "showed her boobs" to get the job, or something to that effect.

26.     On another occasion, AH approached Ms. Zorko and asked something to the effect, "I heard you are into affairs, would you be interested in dating my friend?"

27.     Ms. Zorko reported the incident, in which AH asked if she was "into affairs," to the HR Director. YAG's HR Director asked if she would like to pursue a case about it, or something to that effect. Ms. Zorko replied with "not if it will cost me my job." The HR Director then told Ms. Zorko that it would be best not to pursue a case if she wanted to keep her job.

28.     No action was taken in response to Ms. Zorko's complaint.

29.     In a series of informal meetings that occurred on Thursday mornings at 9:00 am, Ms. Zorko reported to Oliver Young specific incidents of rude or hostile behavior towards women and asked him to take corrective action. On one occasion, Young responded to Ms. Zorko's complaint by saying "it's not a big deal" and he refused to issue any directives to staff members that would protect women from harassment.

30.     No action was taken in response to Ms. Zorko's complaints to Spencer Young Jr.

31.     Ms. Zorko also complained to President Spencer Young Jr. that the way her supervisor Johnston, and other employees, were talking to her was inappropriate. She explained that Oliver Young had not done anything about the name calling when she reported it to him.

32.     No action was taken in response to Ms. Zorko's complaints to Spencer Young Jr.

33.     In the beginning of April 2017, Ms. Zorko again complained to her supervisors about rude and hostile comments (such as "YAG Bitch"). During April, she would bring up the topic during the weekly staff meetings. Johnston and Young Jr. did not like it when Ms. Zorko discussed the harassment in staff meetings, and refused to use their power to stop the use of sexist nicknames, such as "YAG Bitch."

34.     YAG's managers and executive officers were aware of the sexually charged and hostile work environment created by offensive behavior of male and complicit female employees, but condoned or encouraged the offending behavior.

35.     Defendants' workplace was permeated with discriminatory behavior that was sufficiently severe or pervasive as to alter the conditions of Ms. Zorko's employment and create an abusive working environment.

36.     YAG, through its agents, actively condoned discrimination against women.

37.     Despite these challenges, Ms. Zorko continued to perform her job well. At the end of April, Ms. Zorko was rewarded for her exceptional job performance with a trip to New York City. Ms. Zorko was in New York from April 30th to May 3rd. During her trip, she was given an itinerary with optional events to attend, such as a Broadway play and a tour of the 9/11 Memorial. She attended two out of the four optional events.

38.     When Ms. Zorko returned to work on May 4, 2017, she was pulled into a meeting with Johnston, Young Jr., and the HR Director, where she was written up for "fail[ing] to attend or engage in any of the group activities during than YAG Eagles trip," even though the activities were optional and Ms. Zorko did attend two out of the four activities. During this meeting, Young accused her of being "an entitled millennial" and the most difficult employee they have ever had to work with.

39.     Ms. Zorko had never had any other formal verbal or written disciplinary action from supervisors ("write-ups") prior to this date.

40.     Young issued Ms. Zorko a personal improvement plan ("PIP") that gave her 30 days to "improve her attitude."

41.     On May 8, 2017, Ms. Zorko was called into another meeting, this time with Johnston and two HR employees. She was told that she was being fired. She walked to her office to retrieve a written complaint she was planning to submit with the HR department because of the treatment she received in the May 4th meeting. In that complaint, Ms. Zorko alleged that she felt "harassed by Oliver Young" and that she had been "discriminated against for [her] gender by Oliver Young."

42.     The people in the meeting said it was irrelevant because they were letting her go, so no investigation would take place, or something to that effect.

43.     After Ms. Zorko was fired, she submitted the written complaint to Human Resources.

44.     On May 8, 2017, Young Automotive terminated Ms. Zorko before she could submit her written complaint to HR and before she had been given an opportunity to complete her PIP.

45.     YAG's stated reasons for terminating Ms. Zorko, including her failure to attend optional recreational events and for having a "bad attitude," were pretextual.

46.     YAG's decision to terminate Ms. Zorko was motivated by her sex.

47.     YAG's decision to terminate Ms. Zorko was done in retaliation for her complaints and opposition to sexual harassment in the workplace.

48.     Ms. Zorko did not receive a pay raise for over two years, despite taking on considerable responsibility. Her income was significantly less than other similarly situated male employees.

49.     Comparable employees in the industry were paid much more than Ms. Zorko was paid at YAG.

50.     Ms. Zorko requested training for a promotion to a management position. Her request was ignored. Other similarly situated male employees were given training in the form of shadowing General Managers so they could "get in line" for a General Manger position in the future. Ms. Zorko was denied this opportunity.

**EXPRESSIONS OF SEXIST ATTITUDES BY YAG MANAGEMENT**

51.     Spencer Young, Jr. expressed on multiple occasions that he wanted to preserve the "brotherhood" of executive management and store management, or something to that effect.

52.     During the period from approximately 2014 to 2017, there were no woman managers throughout the dealerships owned and operated by YAG.

53.     Oliver Young stated that "most" women lacked work ethic because they are used to staying home with their children, or something to that effect.

54.     Another manager, Jared Price stated on multiple occasions that he does not like to hire women, because they are "too dramatic," "sensitive," "more likely to have issues with kids," and "unreliable," or things to that effect. He said something to the effect of, "I don't understand why we have to keep hiring women?"

55.    On another occasion, Mr. Price, saw a woman crying, and stated, "that is why I don't like hiring women," or something to that effect. Other YAG managers were present when he stated this and did not audibly disagree.

56.    As a result of sexist attitudes and practices that were condoned or encouraged by YAG, management and executive positions were almost exclusively reserved for men.

57.    Ms. Zorko was denied pay raises and paid less than similarly situated male employees because of her sex.

## CULPABILITY

58.    YAG's actions were of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

59.    The actions of the executives, managers, and other staff are fairly attributable to YAG because these actions occurred while they were working and were within the scope of their employment.

60.    Additionally, the actions of YAG supervisors, officers, and agents are attributable to the companies because:

   a.   The acts of the supervisors, officers, and agents were implicitly and without limitation intended, directed, ratified and/or authorized by YAG because of the past history of similar acts engaged in by YAG supervisors and human resources staff;

b.  Despite having knowledge of supervisors' and human resources employees' past history of similar acts and unfitness, YAG acted recklessly in continuing to employ, promote and/or retain them;

c.  YAG agents that subjected Ms. Zorko to discipline were acting within the real or apparent scope of their employment.

61.   YAG's actions were taken in the face of a perceived risk that such actions would violate federal law.

62.   YAG acted with malice or with reckless indifference to the federally protected rights of the aggrieved Plaintiff.

63.   Ms. Zorko is entitled to recover punitive damages in an amount to be established by proof at trial.

## FIRST CAUSE OF ACTION
### (Retaliation)

64.   Plaintiff incorporates the allegations of the above paragraphs herein.

65.   Plaintiff engaged in a protected activity by reporting suspected instances of discrimination based on gender and sexual harassment. When Plaintiff reported the discrimination and harassment, she was acting under a reasonable, good faith belief that YAG violated her rights or the rights of others.

66.   YAG retaliated against Plaintiff for opposing unlawful gender discrimination and sexual harassment, which retaliation violated 42 U.S.C.A. § 2000e-3(a).

67.     Plaintiff was subjected to a material adverse action immediately after the protected activity took place. Specifically, she was fired.

68.     There exists a causal connection between the protected activity and the adverse action.

69.     YAG's decision to fire Ms. Zorko was an action that a reasonable employee would have found materially adverse, meaning it might have discouraged a reasonable worker from reporting suspected discrimination based on gender.

70.     As a direct and proximate result of YAG's retaliation, Plaintiff has incurred damages in an amount to be proven at trial.

71.     As a result of YAG's actions, Plaintiff is entitled to an award of punitive damages against YAG pursuant to the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a(b), et seq., in addition to other damages, in such amount as will be proven at trial.

72.     Plaintiff is entitled to attorney's fees pursuant to 42 U.S.C. §§ 2000e-5(k), 12117(a) in an amount to be established at trial.

## SECOND CAUSE OF ACTION
### (Sexual Harassment and Hostile Work Environment)

73.      Plaintiff was subjected to unwanted crude jokes, sexist comments from male executives and employees.

74.     The conduct was not welcomed by Plaintiff.

75.     The conduct was motivated by the fact that Plaintiff is a woman.

76.     The conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

77.     Plaintiff believed her work environment to be hostile or abusive as a result of the conduct.

78.     In regards to conduct by non-management employees, management-level employees knew, or should have known, of the abusive conduct. Management level employees should have known of the abusive conduct because an employee provided management level personnel with enough information to raise a probability of harassment of women in the mind of a reasonable employer, and/or the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

**THIRD CAUSE OF ACTION**
**(Discrimination Based on Sex)**

79.     Plaintiff incorporates the allegations of the above paragraphs herein.

80.     YAG's actions, specifically those of its officers and supervisors, including discrimination in pay, promotion, perks, and other conditions of employment, and wrongful termination, were taken against the Plaintiff and were motivated, in part, by the fact that she is a woman and are in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.

81.     Plaintiff's gender played a role in YAG's decision to deny her per diem, pay her less than similarly situated male employees, deny her promotion opportunities, otherwise treat her differently than male employees, and ultimately fire her.

82.     But for Plaintiff's gender, YAG would not have denied her per diem, paid her less than similarly situated male employees, denied promotion opportunities, or terminated her employment.

83.     YAG's actions, and those of their supervisors, have caused Plaintiff to suffer general damages, including out-of-pocket expenses and emotional distress and embarrassment. As a result of YAG's actions, Plaintiff is entitled to an award of compensatory damages against YAG pursuant to the Civil Rights Act in addition to other damages, in such amount as will be proven at trial.

84.     As a result of YAG's actions, Plaintiff is entitled to an award of punitive damages against YAG pursuant to the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a(b), et seq., in addition to other damages, in such amount as will be proven at trial.

85.     Plaintiff is entitled to attorney's fees pursuant to 42 U.S.C. §§ 2000e-5(k), 12117(a) in an amount to be established at trial.

## FOURTH CAUSE OF ACTION
### (Discriminatory Discharge)

86.     Plaintiff incorporates the allegations of the above paragraphs herein.

87.     Plaintiff belongs to a protected class or minority

88.     Plaintiff was qualified for her job.

89.     Plaintiff was fired despite her qualifications.

90.     After she was fired, her job remained open and the employer sought applicants whose qualifications were no better than her qualifications.

91.     Defendant fired Ms. Zorko because in violation of Title VII of the Civil Rights Act.

## **INJUNCTIVE RELIEF**

92.     Plaintiff incorporate the allegations of the above paragraphs herein.

93.     YAG, along with its supervising employees, officers, agents, and all those subject to its control or acting in concert with it, should be forthwith enjoined from causing, encouraging, condoning, or permitting the practice of gender discrimination against women employees by supervisors and officers within the company.

94.     YAG should further be required to:

        a.      Notify all officers, employees and supervisors employed by YAG through individual letters and permanent posting in prominent locations throughout its offices, that gender discrimination violates Title VII of the Civil Rights Act, regulatory guidelines of the Utah Labor Commission and the Equal Employment Opportunity Commission;

        b.      Ensure that employees complaining of any unlawful discrimination can avail themselves of the full and effective use of the complaint, hearing, adjudication, and appeals procedures for complaints of discrimination established by YAG, pursuant to Equal Employment Opportunity Commission regulations, 29 C.F.R. §§1613.201–1613.283 (1979); and

      c.      Develop other appropriate means of instructing employees of YAG of the harmful nature of unlawful discrimination. YAG should be required to return to this Court within 60 days after the entry of an injunctive order to report on the steps it has taken in compliance with such order and to present its plans for the additional measures required by such injunctive order. The Court should retain full jurisdiction of this case.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1.      Issue an order enjoining YAG to cease and desist from the conduct described above.

2.      Issue an order requiring YAG to take steps to protect Plaintiff and other employees similarly situated from the type of conduct described in above, and from all other forms of discrimination in the future.

3.      Issue an order requiring YAG to adopt and disseminate an effective policy protecting employees from discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of sexual harassment, gender discrimination, religious discrimination, and disability discrimination, and taking suitable remedial action.

4.      Award Plaintiff back pay, including bonuses, pension benefits, and other employment benefits which would have accrued if Plaintiff had not lost her opportunities for advancement with Defendants' companies in an amount to be proved at trial. Award Plaintiff compensatory damages for her emotional suffering in an amount to be established at trial.

16

5.      Award pre-judgment and post-judgment interest at the highest lawful rate;

6.      Award Plaintiff compensatory damages, including wages, employment benefits, and liquidated damages in an amount to be established at.

7.      Award Plaintiff attorneys fees in an amount to be established at trial, pursuant to 42 U.S.C.A. §2000e-5(k).

8.      Award Plaintiff costs, including expert witness fees, interest, and such other relief as this Court may deem proper.

9.      Award Plaintiff punitive damages in amount to be established at trial.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated May 8, 2019.

**BERRETT & ASSOCIATES**


*/s/ Zachary C. Myers*
ZACHARY C. MYERS
BARBARA BERRETT
Attorneys for Plaintiff